UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12073-RWZ

STEVEN PROVOST and JASON PIKE

v.

THE MASSACHUSETTS DEPARTMENT OF CORRECTION,
STEVEN J. O'BRIEN, *Superintendent of the Namansket Correction Center,*
and THOMAS TURCO III, *Commissioner of the Department of Correction*

MEMORANDUM OF DECISION AND ORDER

January 12, 2018

ZOBEL, S.D.J.

Plaintiffs Steven Provost and Jason Pike bring this action[1] against defendants Massachusetts Department of Correction ("DOC"), Superintendent of the Namansket Department of Correction, Steven J. O'Brien, and Commissioner of the Department of Correction, Thomas A. Turco III. Plaintiffs contend that defendants violated their right to be free from illegal detention, in violation of 42 U.S.C. § 1983, and their Fourth, Eighth, and Fourteenth Amendment rights (Count I). Plaintiff Provost also asserts that defendants violated his civil rights under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, through threats, intimidation, and coercion (Count II). Docket # 13. Before me now are defendants' motions for summary judgment (Docket # 10), to strike (Docket # 29), and to dismiss Pike's claim (Docket # 31).

---

[1] Plaintiffs also assert class action allegations in their amended complaint. However, during the hearing on September 20, 2017, the parties agreed that the issue of class certification is not properly before me at this time.

**I.	Background**

I summarize the relevant facts in the light most favorable to plaintiffs, the non-moving parties.  See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172 (1st Cir. 2015).

**A.	Superior Court Proceedings Related to Provost**

In March 2008, a jury returned a verdict finding that Provost was a sexually dangerous person.  Docket # 12-1, at 30.  Subsequently, Provost was committed to the Massachusetts Treatment Center at Bridgewater (the "MTC") "for an indeterminate period of a minimum of one day and a maximum of his natural life until discharged pursuant to the provisions of [Mass. Gen. Laws ch. 123A,] section 9."  Id.  On November 19, 2012, Provost filed a petition in the Hampden Superior Court for examination and discharge pursuant to Massachusetts General Laws chapter 123A, section 9.  Id. at 35.  A jury trial was held in April 2016, which concluded on Friday, April 22, 2016, when the jury returned a verdict that Provost was no longer sexually dangerous.  Id. at 39.  There is a dispute about certain events that transpired after the jury's verdict.  Plaintiff asserts that the superior court judge initially allowed his request for immediate release, but that the DOC objected and interfered by informing court officers that Provost had to return to the MTC until correct paperwork relating to Provost's intended residence was submitted to the Sex Offender Registry Board ("SORB").  See Docket # 13, at ¶¶ 29–35; see also Docket # 23-1, at ¶¶ 8–15.  Provost had initially submitted to SORB the address of the Southampton Street Shelter as his intended address, but on the last day of trial, he provided DOC counsel with the address of the Boston Rescue Mission.  Provost claims that the DOC informed his

counsel that it "needed Mr. Provost to remain incarcerated until they had submitted the 'correct' address of the Boston Rescue Mission in Boston to SORB." Docket # 23-1, at ¶ 11. Defendants move to strike such assertions because, they contend, these statements are hearsay. In any event, it is undisputed that rather than ordering Provost to be immediately released, the superior court issued an Order of Discharge signed by the session clerk ordering Provost to be "discharged from custody and released from the Massachusetts Treatment Center no later than the end of the business day on Monday April 25, 2016." Docket # 12-1, at 39. Provost was eventually released on April 25 at approximately noon. Id. at 40.

### B. State Proceedings Related to Pike

Around 2002, Pike was involuntarily civilly committed as a sexually dangerous person pursuant to Massachusetts General Laws chapter 123A, section 9, and he remains committed in the MTC. Like Provost, Pike filed a petition for examination and discharge, and his trial is scheduled to begin on November 4, 2019. Docket # 13, at ¶ 53.

### C. United States District Court Proceedings

On October 17, 2016, Provost filed his original complaint against defendants in this court. Docket # 1. After several assented-to motions for extension of time to respond, defendants moved for summary judgment on April 11, 2017. Docket # 10. On May 1, 2017, Provost filed an amended complaint, adding Jason Pike as a named plaintiff and clarifying that plaintiffs are suing defendants Turco and O'Brien in their individual capacities. See Docket # 13, at ¶¶ 6–7. In response to plaintiffs' opposition to their motion for summary judgment, defendants moved to strike portions of plaintiffs'

3

statement of undisputed facts and affidavit of Michael Ryan (the "Ryan Affidavit"), who was co-counsel for Provost in the state court proceeding. Docket # 29.

## II. Legal Standard

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' and a 'material fact' is one which 'might affect the outcome of the suit under the governing law.'" Poulis-Minott v. Smith, 388 F.3d 354, 363 (1st Cir. 2004) (quoting Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993)). "In order to defeat a motion for summary judgment, the nonmovant may not rest upon some combination of conclusory allegations, improbable inferences, and unsupported speculation, but must instead present definite, competent evidence to rebut the motion." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 516 (1st Cir. 2015).

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. In opposing such motion, the plaintiff bears the burden of establishing that the court has jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). "[A] plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (citations omitted). "Dismissal is appropriate where a 'district court lacks the statutory or constitutional power to adjudicate' the case." Seow v. Grondolsky, No. 10-cv-40174-TSH, 2012 WL 5392322 at *1 (quoting Makarova v.

4

United States, 201 F.3d 110, 113 (2d Cir. 2000)).

## III. Analysis

Defendants move for summary judgment as to Provost's claims and move to dismiss Pike's § 1983 claim. I address first defendants' motion to dismiss Pike's claim for lack of standing and ripeness.

### A. Motion to Dismiss Pike's § 1983 Claim

"'A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim.'" Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 894 F. Supp. 2d 144, 150 (D. Mass. 2012) (quoting Edelkind v. Fairmont Funding, Ltd., 539 F. Supp. 2d 449, 453 (D. Mass. 2008)). "The Constitution limits the judicial power of the federal courts to actual cases and controversies." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing U.S. Const. art. III, § 2, cl. 1). "To satisfy the personal stake requirement, a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Katz, 672 F.3d at 71 (citing Lujan, 504 U.S. at 560–61). In order to establish injury in fact, plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. "Ripeness, another aspect of justiciability, 'has roots in both the Article III case or controversy requirement and in prudential considerations.'" Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)). In order to establish ripeness, plaintiff must show that it meets both the "fitness" and "hardship" prongs. See Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003).

5

"The jurisdictional component of the fitness prong concerns 'whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts.'" Reddy, 845 F.3d at 501 (quoting Roman Catholic Bishop, 724 F.3d at 89).

Defendants argue that Pike lacks standing and that his claim is not ripe for adjudication. Specifically, they contend that Pike has failed to establish an injury in fact because his trial has yet to take place—it is currently scheduled for November 2019—and thus, he cannot establish that a jury will find him to be not sexually dangerous and that defendants will violate his rights. They also assert that this case is not ripe because "Pike's claim relies on a chain of contingencies that may never come to pass," Docket # 32, at 8, including the fact that Pike may be found to be sexually dangerous and therefore, ineligible for release.

I agree. Whether Pike will be found eligible for release in 2019, and whether the DOC will infringe on his rights, is highly uncertain at this time. Accordingly, defendants' motion to dismiss Pike's claim is allowed.[2] See Katz, 672 F.3d at 71 ("The requirement of an actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time."); see also Reddy, 845 F.3d at 500 ("[T]he Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"

---

[2] Defendants also move to dismiss Pike's claims under Federal Rule of Civil Procedure 12(b)(6). Because I find sufficient reason to dismiss Pike's claims under Federal Rule of Civil Procedure 12(b)(1), I will not address defendants' arguments for failure to state a claim. See Ne. Erectors Ass'n of the BTEA v. Sec'y of Labor, Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995).

(quoting Texas v. United States, 523 U.S. 296, 300 (1998))).

## B. Motion for Summary Judgment as to Provost's Claims

Defendants argue that they are entitled to summary judgment because (1) Provost cannot recover damages under 42 U.S.C. § 1983 without having shown that the superior court order was invalid; (2) defendants acted pursuant to a facially valid court order and therefore are entitled to qualified immunity; (3) Provost cannot recover money damages against the DOC or the individual defendants in their official capacities under the Eleventh Amendment[3]; (4) Provost fails to state a claim for relief under the Massachusetts Civil Rights Act; and (5) Provost lacks standing to seek declaratory and injunctive relief.

Defendants' motion is allowed with respect to claims against the DOC. Although not expressly stated as an Eleventh Amendment defense, defendants argue that the DOC cannot be held liable because "[t]he Commonwealth and its agencies are not 'persons' within the meaning of 42 U.S.C. § 1983," Docket # 11, at 7 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 65–66 (1989)). In Michigan Dep't of State Police, the Supreme Court held that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suit unless the State has waived its immunity," 491 U.S. at 66 (citations omitted). Presumably, recognizing the well-established case law that a plaintiff cannot sue an agency or state officials acting in their official capacity for

---

[3] Defendants' motion for summary judgment was filed in response to plaintiff's original complaint, which appeared to bring suit against Turco and O'Brien in their official capacities. See Docket # 1, at ¶¶ 5–6.

damages under § 1983, plaintiffs amended their complaint to "clarif[y] that these defendants are being sued in their individual capacity." Docket # 21, at 19. However, plaintiff fails to address the DOC's sovereign immunity defense, which absolutely bars plaintiff's claims against the DOC. See Poirier v. Mass. Dep't of Correction, 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'" (quoting Ky. v. Graham, 473 U.S. 159, 167 n. 14 (1985))); see also Cryer v. Clarke, No. Civ. A. 09-10238-PBS, 2012 WL 6800791, at *6 (D. Mass. Sept. 7, 2012) ("[T]he DOC, as an arm of the state, enjoys Eleventh Amendment immunity from suit in federal court." (citing O'Neill v. Baker, 210 F.3d 41, 47 & n. 5 (1st Cir. 2000))).

To the extent that Provost's claim for damages against the state officials sued in their individual capacities remains, defendants argue that they are entitled to summary judgment because plaintiff is precluded under the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994), from recovering under § 1983 when plaintiff failed to challenge the superior court discharge order on direct appeal. Heck held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486–87. Plaintiff argues that Heck's favorable termination rule is inapplicable because he is not challenging "the period during which he was civilly committed at the Treatment Center," Docket # 21, at 6. He claims, rather,

8

that he is "contesting the D.O.C.'s practice of extending otherwise-free individuals based upon an incorrect reading of the law," id. at 8. Here, Provost was not free "until discharged" by court order. See Mass. Gen. Laws ch. 123A, § 9; see also Docket # 12-1, at 30. Per the superior court's discharge order, he was confined to the MTC until April 25, 2016. As a result, a favorable ruling against the alleged misconduct of defendants would necessarily imply the invalidity of the superior court order.[4] See Wilkinson v. Dotson, 544 U.S. 74, 83 (2005) ("[Heck and its progeny] indicate that a prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Plaintiff further argues that "the timing of the Defendants' actions left no meaningful opportunity to bring an appeal," and "[h]ad Mr. Provost appealed the court's ruling after his release, the appeal, in all likelihood, would have been dismissed as being moot." Docket # 21, at 17. Although any request for injunctive relief may have been moot if he appealed after his release, Provost only seeks damages against defendants, and thus, could have filed a direct appeal related to any injury he suffered as a result of the alleged unlawful extended confinement. See Docket # 13, at 15 (requesting that "the Court award damages for the Plaintiff Steven Provost . . .;

---

[4] Moreover, Provost alleges that court officers refused to release him because they were "[a]biding by the DOC's request," Docket # 10, at ¶ 40. It is unclear why court officers would follow the direction of the DOC and not the court. In any event, the disputed facts concerning the events leading up to the issuance of the discharge order are not material for summary judgment purposes of deciding whether, as a matter of law, Provost was required to first challenge the court's discharge order on direct appeal before bringing suit in this court.

9

including compensatory damages against all individual Defendants jointly and severally, and punitive damages against all individual damages")[5]; cf. Cabot v. Lewis, 241 F. Supp. 3d 239, 249 (D. Mass. 2017) ("[U]nder the law of this circuit, the fact that plaintiff is not in custody and therefore cannot obtain habeas relief has no bearing on Heck's applicability to his claim."). Accordingly, plaintiff's § 1983 claim is barred under Heck.

Having dismissed plaintiff's only federal claim, this court declines to exercise pendent jurisdiction over his remaining state law claim, particularly because the substantive issues will likely require interpretation of the relevant state statutory provisions. See 28 U.S.C. § 1367(c); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (citation omitted).

### C. Motion to Strike

Because I do not rely on Ryan's Affidavit in resolving the instant motion for summary judgment, I need not reach defendants' motion to strike.

---

[5] In his initial complaint, Provost sought injunctive and declaratory relief; but in their Amended Complaint, such relief is sought only with respect to Pike's claim, see Docket # 13, at 15. Because defendants' motion for summary judgment was brought prior to the Amended Complaint, they argued that Provost lacks standing to seek such relief because he has been released from the DOC's custody. Despite no longer seeking such relief in the Amended Complaint, Provost nevertheless responds to defendants' argument. See Docket # 21, at 25–28. His prediction that he will likely commit crimes in the future, which may result in similar issues pertaining to any release, cannot, without more, confer standing today.

## IV. Conclusion

Defendants' Motion for Summary Judgment (Docket # 10) and Motion to Dismiss Jason Pike's Claim (Docket # 31) are ALLOWED as to Count I. The state law claim (Count II) is DISMISSED without prejudice.

Judgment may be entered accordingly.

Defendants' Motion to Strike (Docket # 29) is DENIED AS MOOT.

|  |  |
|---|---|
| January 12, 2018 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |